Filed 7/15/14  In re Lacie H. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re LACIE H., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B250850<br>(Super. Ct. No. J1395744)<br>(Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA H.,<br><br>    Defendant and Appellant. | |

Father appeals an order terminating his parental rights pursuant to Welfare and Institutions Code section 366.36.[1]  We affirm.

FACTS

On January 12, 2012, Santa Barbara County Child Welfare Services (CWS) filed a child dependency petition on behalf of two-year-old Lacie H. and her six-year-old half-sister Angeline.  Joshua H. is Lacie's father (Father).  Angelina has a different father, and her case is not the subject of this appeal.

---

[1] All statutory references are to the Welfare and Institutions Code.

The petition alleged that the children's mother, B.D. (Mother) was taken to the hospital after smoking a drug known as "spice." Mother suffers from schizophrenia and bipolar disorder exacerbated by drug use. The children were left without any support or supervision.

The petition alleges that Father is in federal prison and the children are left without any provision for care or support. The petition alleges jurisdiction pursuant to section 300, subdivision (g).

The CWS report for the detention hearing relates to previous substantiated contacts between CWS and Father. It states that in May 2010, when Lacie was five months old, Father was seen pushing Lacie down the street in a stroller with an open container of alcohol and appeared intoxicated. The person who reported the incident said Lacie was crying and Father had shaken her. On February 28, 2011, Father came into the home, grabbed Mother by the throat and pushed her into Lacie.

The court detained the children and set the matter for the jurisdictional hearing.

A CWS report prepared for the jurisdictional hearing again alleged section 300, subdivision (g) as the basis for the court's jurisdiction. The report notes that Father is incarcerated. It repeats from the detention report the previous substantiated contacts between CWS and Father. The report also states that Father has convictions for driving under the influence (DUI) with priors, inflicting corporal injury on a spouse or cohabitant, first degree burglary, and is currently serving a four-year prison term for assault with a deadly weapon with great bodily injury.

Angelina described Father as "a very bad man." He stole money and choked Mother. He "spent food stamps on beer so we did not have any food."

Father contacted CWS while he was in prison. He said he would like his mother to have custody of Lacie. The paternal grandmother reported to having peripheral neuropathy and could not "'chase after the children.'" She stated, however,

that she could take care of Lacie.  CWS reported concerns about her ability to care for Lacie due to her medical condition.

Paternal aunt, F.H. expressed an interest in caring for Lacie.  CWS faxed her an application on January 24, 2012.  As of February 16, 2012, the date of the report, F.H. had not submitted the application.

The report recommended that reunification services be denied to Father pursuant to section 361.5, subdivision (e)(1), Father is incarcerated and services would be detrimental to the child.

The trial court declared Lacie a dependent of the court under section 300, subdivision (g) and that placement with Father would be detrimental to the child.  The court denied Father reunification services.  Lacie was retained in foster care.

Mother was granted reunification services.  The six-month review report noted only that there have been multiple relative applications for placement, but none of the applicant's homes have been approved at that time.

A report prepared for the 12-month review stated that F.H. and her husband were denied placement in the beginning of the review period due to her husband's criminal history.  During the review period, F.H. reported that her husband had died and her application is now being processed.  The report recommended that the children remain in out-of-home care, Mother's services be terminated and the matter set for a section 366.26 hearing.

The CWS report prepared for the section 366.26 hearing stated that CWS has not found F.H. appropriate for placement.  F.H. spent many weeks arguing with CWS workers about placement, becoming verbally abusive at times.  F.H. appeared unstable, becoming tearful at one moment and arguing the next.  Although she stated she would adopt the girls, she was planning to allow Mother and Father back into their lives as parents.

The trial court required Father to file an offer of proof. Father's offer of proof is as follows:

"It is expected that father will testify as to the quality of the relationship prior to his incarceration and that:

"1. The child lived with him from birth until his incarceration in June 2011;

"2. Father provided day to day care of his child prior to[his] incarceration;

"3. The child was healthy and happy and loved while in his care;

"4. various relatives, including mother, grandmother and aunt will testify that through the life of this case, pictures of father were shown to Lacie who recognize Mr. [H.] as her []dad;

"5. Father is sure that if the child was brought to him, she would immediately recognize him as her []dad;

"6. During his incarceration, father completed 40 [hours] of parenting class, 24 [hours] of Victim Awareness Class, 7 [hours] of Buzz on Business, 14 [hours] of Stress Management, 14 [hours] of Anger management, 7 [hours] of Employment, 7 [hours] of Finding a Job, 7 [hours] of Ticket to the Future, 7 [hours] of Every Day Math, 7 [hours] of Outrageous Math, 7 [hours] of Know Thyself, 2 [hours] of Orientation to Computers; and after release 351 [hours] of Residential Treatment, 120 [hours] of Westec Classes, the substance of these courses and its application to this case; and

"7 Father has been incident free since his release in March 2013" The offer of proof was submitted in July 2013.

The trial court found Lacie and Angelina to be adoptable, and terminated the parental rights of Mother and Father.

4

DISCUSSION

I.

Father contends the trial court's jurisdictional findings pursuant to section 300, subdivision (g) was not supported by clear and convincing evidence.

Section 300, subdivision (g) provides in part that the juvenile court may adjudge a child to be a dependent of the court when "the child's parent has been incarcerated . . . and cannot arrange for the care of the child . . . ."

Whether the standard in the trial court is preponderance of the evidence or clear and convincing evidence our task is the same. We must uphold the findings of the trial court if they are supported by any substantial evidence. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 371, p. 428.)

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Here it is uncontested that at the time of the jurisdictional hearing Father was incarcerated. But as Father points out, incarceration alone is not sufficient for jurisdiction. (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077 (*S.D.*).) CWS must also prove that Father could not arrange for Lacie's care. (*Ibid.*)

Father suggested that his mother could take care of Lacie. But CWS suggested Father's mother would not be a suitable placement because her medical condition limited her mobility.

Father's counsel appeared at the jurisdictional hearing and states Father wanted F.H. to have custody of Lacie. But CWS had faxed an application on

5

January 24, 2012.  At the March 5, 2012 jurisdictional hearing Father's counsel urged F.H. to complete the application.

Thus at the time of the jurisdictional hearing Father had suggested only two possible persons to care for Lacie:  his mother and F.H.  The trial court had evidence that Father's mother was unsuitable because of a medical condition and F.H., in spite of having an application for over a month, had not even bothered to apply.  Substantial evidence supports the trial court's finding that Father could not arrange for Lacie's care.

We note that even if F.H. had applied, she would have been found unsuitable because of her husband's criminal record and because CWS found her to be unstable.

Father's reliance on *S.D.*, *supra*, 99 Cal.App.4th 1068, is misplaced.  There the parents were petty criminals but otherwise good parents.  Mother was arrested and father fled the jurisdiction, leaving the child behind.  Mother's sister appeared at the jurisdictional hearing and requested custody of the child.  Custody was given to the sister.  Nevertheless, the trial court found jurisdiction under section 300, subdivision (g).

The Court of Appeal reversed.  The Court held that being incarcerated alone was not sufficient for jurisdiction.  (*S.D.*, *supra*, 99 Cal.App.4th at p. 1077.)  The Court stated that the agency, not the parent had the burden of establishing mother could not arrange for her child's care.  (*Id.* at p. 1078.)  The record showed ample evidence mother could arrange for the child's care.  (*Ibid.*)

In *S.D.*, it was obvious that mother could arrange for her child's care.  A suitable caregiver appeared at the jurisdictional hearing and was given custody of the child.  Here there was no such suitable caregiver.  CWS carried its burden by showing the only caregivers suggested by Father were either unsuitable, had not applied or both.

In any event, the court may take jurisdiction over the child because of the actions of only one parent.  (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1212.)

6

Here the trial court found it had jurisdiction over Lacie because of Mother's actions. Father does not challenge the trial court's findings as to Mother.

Where the court removes a child from the custodial parent, and the noncustodial parent desires to assume custody, the court must give custody to the noncustodial parent, unless it finds that "placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) Here the trial court found that placement with Father would be detrimental to the child. That finding was compelled by uncontradicted evidence of Father's alcoholism and history of violence, including violence directed at Lacie and her mother. No reasonable person would have found otherwise.

## II.

Father claims that terminating his parental rights was not supported by clear and convincing evidence of detriment to his child.

Termination of parental rights requires a finding that it would be detrimental to the child to return the child to parental custody. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 256.) Here there is more than ample evidence to support such a finding.

Father has a substantial history of alcohol abuse and violence. Some of the violence was directed at Lacie and her mother. CWS reported specific instances where Father shook Lacie and grabbed Mother by the throat pushing her into Lacie. Angelina reported Father used the family's food stamps to buy beer, leaving the family without any food. Although Father's offer of proof attempts to paint a picture of a loving and responsible father, it does not contest any of the specific instances of abuse mentioned in the CWS reports. The best Father could say for himself is that he attended a number of classes and had not been in trouble for four months. Given Father's history, his offer of proof does not say much.

7

The judgment (order) is affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


8

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara
_____


Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Toni Lorien, Sr., Deputy Counsel, County of Santa Barbara for Plaintiff and Respondent.